UNITED STATES DISTRICT COURT

WASHINGTON, D.C.



FILED

APR 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ALBERT MORTON, PRO SE          )

      PLAINTIFF          )

1430 W Street, S.E.          ＼

Washington, D.C. 20020          Case: 1:07-cv-00751

(202) 889-4714          Assigned To : Robertson, James
Assign. Date : 4/24/2007
Description: MORTON v. GUITEREZ

-V-          )
          )

    EEOC Ref. No.: 01 A60657          )
          )
          )

CARLOS M. GUITEREZ, SECRETARY,          )

U.S. DEPARTMENT OF COMMERCE,          )

      DEFENDANT          )

1401 Constitution Avenue, N.W.          )

Washington, D.C. 20230          )

## INTRODUCTION

Pursuant to Rules 8a), 12 (b) (1) and 12 (b) (3), 13(i) and 42 (b) of the Federal

Rules of Civil Procedure ("Federal Rules"), Plaintiff, Albert Morton, Pro-Se,

respectfully, is filing a Civil EEOC case against the defendant, U.S. Department

of Commerce and Carlos M. Guiterez, Secretary.  This EEOC case is being filed

due to the fact that the Plaintiff was discriminated against in violation of Title

VII of the Civil Rights Act of 1964.  Plaintiff was subjected to Age and Race

Discrimination and Reprisals for filing former EEOC complaints against the

Defendant.  Plaintiff brings this complaint under Title VII of the Civil Rights Act

1

of 1964 as amended and the Age Discrimination in Employment Act of 1967
(ADEA) and the Rehabilitation Act of Title VII prohibits discrimination based on
race, color, religion, sex, or national origin against federal employees in
executive agencies and the ADEA prohibits age discrimination against federal
employees who are 40 years of age or older. 42 U.S.C. § 2000e-16(a) and 29
U.S.C. § 633a (a). EEOC Regulations forbid retaliation against federal
employees and applicants who participate in the EEO complaint process. 29
C.F.R. § 1614.101 (b).


The plaintiff's claim states allegations that the senior managers of the
Department of Commerce violated the plaintiff's constitutional due process
rights, Title VII and the Rehabilitation Act/ADA. More specific facts are not
required by the Rules.   The Plaintiff's Motion before the court establishes a
prima facie case for each Title VII violation of the Defendant's. The Plaintiff
has submitted Exhibits to support his prima facie case.  The Prima Facie case
proven by Plaintiff is consistent with Rule 56 which requires, "the court to
consider the pleadings, related documents, and evidence in a light most
favorable to the non-moving party. Adickes v. Kress C Co., 398 U.S. 144 (1970).


Under Rule 12(b) (1), the plaintiff bears the burden of establishing that
the court has jurisdiction. *See District of Columbia Retirement Bd. v. United
State*s, 657 F. Supp. 428, 431 (D.D.C. 1987). Because subject-matter
jurisdiction deals with the power of the court to hear the plaintiff's claim in
the first place, a Rule 12(b) (1) motion imposes on the court an affirmative

obligation to ensure that it is acting within the scope of its jurisdictional authority. Pursuant to Rules 13(i) and Rule 42(b), a court faced with diverse issues and unrelated claims in a single action is granted the discretion to order a separate trial of one or more cross claims or counterclaims. The purpose of granting such discretion is to avoid confusion and expedite the ongoing trial. Rule 13(i) also allows the court to render a judgment on a counterclaim or a cross claim even when the original claim has been dismissed. However, in order to do so the, the court must have jurisdiction over the counterclaim or cross claim

Pursuant to Rule 8 – Claim for Relief, the Plaintiff has Demanded Back Pay and $300,000 per Title VII violation. Pursuant to Rules 8a), 12 (b) (1) and 12 (b) (3), 13(i) and 42 (b) of the Federal Rules because there is Genuine Issues as to any Material Fact and the Plaintiff is entitled to RELIEF as a matter of law.

In support of the Plaintiff's Motion, the Plaintiff's Request the Court to respectfully refer to the accompanying memorandums of points and authorities and the statement of material facts. ***Pursuant to Documentary and Evidentiary law,*** <u>the Plaintiff also request the Court to Review the Complete File and the documents/exhibits submitted with Motions in full and the Court accept Plaintiff's Motion.</u>

Plaintiff, a former Audio Visual Equipment Operator, WG-10 with the Office of Administrative Services (OAS), Department of Commerce (Agency) is filing a civil suit in this case on this EEOC Case, Appeal No. : 01A60657, Agency No.; 025100200, alleging "violations of Title

VII: Age, parate Treatment, Americans Abilities Act, and Reprisal. The Plaintiff's complaint and answer attached contains elaborate, factual and substantiated evidence to support his Title VII allegations. Further, the Plaintiff has proven the prima facie criteria for the Title VII violations. The Plaintiff has conclusively proven all alleged violations and provided court decisions supporting the reason his case was filed timely in accordance with "Equitable Tolling" guidelines.

Plaintiff was subjected to discrimination based on the following allegations: (1) Age, (2) Disparate Treatment, (3) Americans Disabilities Act, and (4) Reprisal.

## Tolling:

This claim was filed timely with the Department's EEO Counselor and EEOC. (1) was not the only allegation Plaintiff raised with an EEO Counselor. The claim was filed immediately once the Plaintiff discovered Fraud had been committed by Management.   In fact 123 days after filing the original complaint the Plaintiff visited the EEO Office and found that the EEO counselor could not find the original complaint and asked the plaintiff to re-file the case as a duplicate. Therefore, the claim re-filed 123 days after the original complaint due to the fact that the EEO Counselor misplaced my original complaint filed 123 days before the second filing.   All allegations were filed in the original complaint filed 123 days prior to the second re-filing of the same allegations. The Plaintiff has proven through previous filings and exhibits the fact that he

can prove his allegat⌣ of Title VII violations and he ha⌣t the prima facie requirements for each Title VII violation.

The case of discrimination filed is based on events resulting in Title VII violations. In fact, the Plaintiff has evidence which was recently provided to him by a fellow employee. This evidence is inclusive of written documents provided to management and management employees' own writings regarding the Plaintiff, which will result in a Jury finding in favor of the Plaintiff. The evidence the employee just provided to the employee and found in the office of one (l) of the Managers who subjected me to Title VII violations will without a doubt prove FRAUD which has been committed by the Management Staff in not be truthful regarding their actions against the Plaintiff.

## II.    PROCEDURAL BACKGROUND

Plaintiff received the EEOC Agency Decision (FAD) dated on December 04, 2006 on December 16, 2006. 2001. This request is being filed timely because I am filing this civil suit in court within the 90 days allowed the plaintiff based on the date of receipt.

**Tolling:** Limitation periods are not jurisdictional. Zipes v Trans World Airlines, Inc. (S. Ct. 1982). Courts possess the equitable power to allow filings outside the statutory time limits. The courts may toll the statutory period based upon illness, erroneous advice from the EEOC, or ground of basic fairness. Snell v. Suffolk County (2d Cir.1986). In accordance with EEOC Rules 1614-604 Filing and Computation of Time, states a document shall be deemed timely if it is delivered in person or post marked before expiration of the applicable period or in the

absence of legible   [ ]arked if it is received within five  ' [ ] the expiration of

· applicable timely period.

**Prima Facie Case:**

## I. Claim under the Rehabilitation Act

Mr. Morton repeats and incorporates by reference the allegations of the this complaint, as they were set forth in full. Defendant, Carlos M. Guiterez, Secretary, Defendant, U.S. Department, U.S. Department of Commerce, Agency forced the termination of Mr. Morton's employment on account of his age in violation of his right to equal employment opportunity as protected by the Human Rights Law, §296 et. seq.

Plaintiff has Made a Claim under the Rehabilitation Act and Established a Prima Facie Case: The Plaintiff is making a claim under the Rehabilitation Act which applies to federal employees. The following regulations are in accordance with the American with Disabilities Act and the Rehabilitation Act. The history of the ADA directed that it should be construed consistent with judicial interpretation of the Rehabilitation Act. The courts do have subject matter jurisdiction in accordance with the Rehabilitation Act where coverage is limited to government employees….. The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)), shall be available, with respect to

6

any complaint under ⌣ on 791 of this title, to any em⌣ ⌣ or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefore or other appropriate relief in order to achieve an equitable and appropriate remedy.

(a) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

(b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Under the Rehabilitation Act: (1) If you have a disability and are qualified to do a job, the REHABILITATION ACT protects you from job discrimination on the basis of your disability; (2) Under the REHABILITATION ACT, you have a disability if you have a physical or mental impairment that substantially limits a major life activity; and (3)The REHABILITATION ACT also protects you if you have a history of such a disability, or if an employer believes that you have such a disability, even if you don't.

To be protected under the REHABILITATION ACT, you must have, have a record

of, or be regarded as having a substantial, as opposed to minor, impairment. A substantial impairment is one that significantly limits or restricts a major life activity such as hearing, seeing, speaking, walking, breathing, and performing manual tasks, caring for oneself, learning or working.

If you have a disability, you must also be qualified to perform the essential functions or duties of a job, with or without reasonable accommodation, in order to be protected from job discrimination by the REHABILITATION ACT. This means two things. First, you must satisfy the employer's requirements for the job, such as education, employment experience, skills or licenses. Second, you must be able to perform the essential functions of the job with or without reasonable accommodation. Essential functions are the fundamental job duties that you must be able to perform on your own or with the help of a reasonable accommodation. An employer cannot refuse to hire you because your disability prevents you from performing duties that are not essential to the job.

Reasonable accommodation is any change or adjustment to a job or work environment that permits a qualified applicant or employee with a disability to participate in the job application process, to perform the essential functions of a job, or to enjoy benefits and privileges of employment equal to those enjoyed by employees without disabilities. For example, reasonable accommodation may include providing or modifying equipment or devices, job restructuring, part-time or modified work schedules, reassignment to a vacant position, adjusting or modifying examinations, training materials, or policies, providing readers and interpreters, and making the workplace readily accessible to, in addition, usable by people with disabilities.

An employer is required to provide a reasonable accommodation to a qualified applicant or employee with a disability unless the employer can show that the accommodation would be an undue hardship -- that is, that it would require significant difficulty or expense. It is also unlawful for an employer to retaliate against you for asserting your rights under the REHABILITATION ACT. The Act also protects you if you are a victim of discrimination because of your family, business, social or other relationship or association with an individual with a disability.

Once you have been hired and started work, your employer cannot require that you take a medical examination or ask questions about your disability unless they are related to your job and necessary for the conduct of your employer's business. Your employer may conduct voluntary medical examinations that are part of an employee health program, and may provide medical information required by state workers' compensation laws to the agencies that administer such laws.

The results of all medical examinations must be kept confidential, and maintained in separate medical files. Plaintiff was discriminated against in violation of the Rehabilitations Act. The Agency violated the plaintiff's constitutional civil rights by (1) requiring to take a medical examination when they were not related to the job and were not necessary for the conduct of the employer's business, (2) the plaintiff's handicapped parking space, (a reasonable accommodation) was taken from him and office space. The separate office space was given to the plaintiff as a EEO Settlement Agreement

9

(See **Exhibit 1**), ar___3)  the fact that the agency I___a record that the complainant had a disability and provided reasonable accommodations, handicapped parking space and a separate office space where plaintiff controlled the heat controls.  Plaintiff's new supervisors (Catherine Teti and Vera Whistenton) denied the reasonable accommodations by taking away the complainant's handicapped parking space and moving his out of the designated office space in accordance with an EEOC settlement outlining that employee would be given his own office space to accommodate his medical disability. Further, the supervisor violated the Americans with Disabilities Act because they were not being subject to undue hardship by providing the complainant with reasonable accommodations, which had been provided and were of record since 1989.

Categories that arise in the employment setting where an individual's innate characteristics such as race, ethnicity or age, lead to an almost assumed entitlement to coverage, claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., require an initial inquiry as to one's protected status.  Specifically, entitlement to protection under the ADA requires an initial determination of whether a person is in fact "disabled" for purposes of the Act.

The statutory definition of "disability," as enacted in 1990, reads as follows:

The term "disability" means with respect to an individual -

(1)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(2) a record of such an impairment; or

(3) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  Each of these definitions of "disability" will be discussed below.

In accordance with the definition of "disability" the complainant had a physical impairment that substantially limited one of major life activities (i.e., walking, lifting and speaking). The Department of Commerce had a record of such impairment and regarding the complainant as having such impairment.  In fact, the Department of Commerce recognized the plaintiff's disability and provided reasonable accommodations, separate office space and handicapped parking space.   The reasonable accommodations had been approved by former supervisors, Bob Heinemann and Jim Beam for numerous years and the Department of Commerce agreed to provide the complainant separate office space as a settlement for an EEOC claim filed in 1998.  The Department of Commerce had a record of the complainant's disability and medical records to support the disability which was used to make the determination to provide the reasonable accommodations.

Supervisors, Catherine Teti, Vera Whisenton and Hajimos decided to remove the reasonable accommodations provided to the plaintiff for 12+ years.  The EEOC defines a "physical or mental impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and

11

endocrine; or ... [ ] mental or psychological disc [ ] uch as mental
retardation, organic brain syndrome, emotional or mental illness and specific
learning disabilities." 29 C.F.R. § 1630.2(h).


The complainant's disabilities meet the "physical or mental impairment" due
to the fact that the complainant's suffered speech, neurological and physical
impairments. Once impairment is established, the next inquiry is whether that
impairment affects a major life activity.    The EEOC defines "major life
activit[ies]" as "functions such as caring for oneself, performing manual tasks,
walking, seeing, hearing, speaking, breathing, learning, and working."    29
C.F.R. 1630.2(i).  This list is exemplary rather than exhaustive.  See Bragdon v.
Abbott, 524 U.S. 624 (1998).


The agency was aware that the Plaintiff suffered from Vertigo, although this
condition was an intermittent impairment the complainant never knew when
the condition would flair up. The Seventh Circuit distinguishes between an
intermittent impairment and an intermittent impairment that is a
characteristic manifestation of an admitted disability.  See EEOC v. Sears,
Roebuck & Co., Nos. 99-3734, 99-4037, 2000 WL 1672612, at *7 n.4 (7th Cir.
Nov. 8, 2000) (citing Vande Zande v. Wisconsin Dep't of Admin., 44 F.3d 538
(7th Cir. 1995)).  In Sears, Roebuck & Company, the plaintiff was diagnosed
with neuropathy, which caused her to have trouble walking long distances or
for prolonged periods of time. 2000 WL 1672612, at *1.  The defendant argued
that the plaintiff's condition was episodic, as it worsened the longer and
farther the plaintiff was forced to walk, and therefore could not qualify as a
disability under the ADA.  Id.  While the court agreed that the plaintiff's

12

condition was intermittent, it stated, "[t]hat neuropathy manifests itself in a predictable yet intermittent pattern does not preclude a finding that one suffering from the condition can be termed disabled." Id. at *7. The court concluded that the fact that plaintiff's condition was episodic was not dispositive. Id.

The agency was aware that the Plaintiff suffered from a back injury and that he was restricting in lifting objects over 50 pounds. Courts have found individuals substantially limited in the major life activity of working. See, e.g., Burns v. Coca-Cola Enters., Inc., 222 F.3d 247, 253-54 (6th Cir. 2000) (holding that plaintiff who suffered a back injury and was restricted to lifting not more than twenty-three pounds was disabled under the ADA because his injury precluded him from performing at least fifty percent of the jobs that he was qualified to perform given his age, educational background and experience); Webner v. Titan Distrib., Inc., 101 F. Supp. 2d 1215, 1221-22 (N.D. Iowa 2000)

In cases involving the major life activity of working, the individual's age, training, skills, abilities, education, or work experience can affect the outcome of the case. For instance, in Burns v. Coca-Cola Enterprises, Inc., 222 F.3d 247 (6th Cir. 2000), the court found that the plaintiff, who suffered a back injury and was restricted to lifting not more than twenty-three pounds, was disabled under the ADA because his injury precluded him from performing at least fifty percent of the jobs that he was qualified to perform given his age, educational background, and prior work experience. Id. at 253-56.

The agency had a re ⌣ the plaintiff's disability and ⌣d to ignore the record, in fact removed all reasonable accommodations previously provided to the plaintiff.   The medical documentation the plaintiff provided the agency supervisors showed that the defendant was cognizant of plaintiff's disabilities, as it provided him with accommodations. This action by the agency is in violation of the Rehabilitation Act.

RECORD OF IMPAIRMENT: Even if one is not currently "disabled" for purposes of the ADA, the ADA protects individuals who have a "record of such impairment." See 42 U.S.C. § 12102(2) (B).  Having a record of such impairment means that the individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (emphasis added).

In view of the agency providing reasonable accommodations to the plaintiff for 12+ years, the removal of the reasonable accommodations was discriminatory to the plaintiff.

## II.   REGARDED AS DISABLED

The final basis for establishing the existence of a disability under the ADA requires a finding that one is improperly regarded as having an impairment that substantially limits a major life function.   42 U.S.C § 12102(2) (C).   The "regarded as" prong of the ADA's disability definition is intended to provide a remedy for discrimination based on misperceptions about the abilities of

impaired persons.  S`  .cka v. City of Chicago, 203 F.~  5  513-14 (7th Cir. 2000).  The standard for satisfying the third prong of the definition of disability was set forth by the United States Supreme Court as follows:

There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities.  In both cases, it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

### III. Medical Inquiry:

The plaintiff requested a renewal permit for his handicapped parking space and it was denied by his supervisors without reason.   The supervisors then requested medical information from the plaintiff which he provided.   The supervisors demanded that the complainant submit to a medical examination by a doctor they selected and would not accept my physician's medical documentation substantiating my medical condition and disabilities.  Hence, the agency medical physician, Dr. Jones made phone inquiries to my doctors regarding my medical history without written authorization from me which is in violation of ADA. Dr Jones was only allowed and permitted to speak to my doctors after obtaining a release from the employee.  I never provided a

15

release to Dr. Jone⁓ 🌙my supervisors. In fact, I requ⁓ 🌙that they provide me with the copy of release with my signature to ascertain the fact that I did not provide permission. In accordance with EEOC guidelines, an employer or their representative can only speak to employee's physician after first obtaining a release from the employee that will permit the doctor to talk to the employer.

In fact, the agency's disability-related inquiry or medical examination of me was not "job-related and consistent with business necessity." This medical inquiry can only be made when an employer has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition. This was not the case with the Defendant. There was no issue of me performing the essential job functions or that I posed a direct threat due to my medical conditions. The agency's actions were discriminatory and in violation of the American Disabilities Act.

The Agency violated the Plaintiff's civil rights in accordance with the Americans with Disability Act by not following the regulations for scope and manner of disability-related inquiries and medical examinations. The Agency Supervisors' singled out the employee to make a disability related inquiry when they had medical information substantiating the disability on file. The documentation provided the employer met the documentation requirements: (1) the documentation described the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits,

and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiated why the requested reasonable accommodation is needed.

The plaintiff provided sufficient documentation to the employer and the employer continued to request additional medical information and even my physician stated these requests harbor on unnecessary harassment. I have not had an employer request all of this information and in violation of medical records and what information is to be released to an employer. EEOC regulations state, "If an employee provides insufficient documentation, the employer may send the employee to an appropriate health care professional of the employer's choosing. But the EEOC points out that, if the employee provides insufficient documentation in response to an employer's initial request, the employer should first give the employee an opportunity to provide the missing information. In addition, the employer should consider consulting with the employee's doctor, after first obtaining a release from the employee that will permit the doctor to talk to the employer.

## IV.    Scope and Manner of Disability-Related Inquiries and Medical Examinations

In most circumstances, where an employee asks for an accommodation because of a disability, an employer cannot ask for an employee's complete medical records. Such records are likely to contain information unrelated to the disability at issue and the need for accommodation and an employer is limited to requiring documentation that is sufficient to address the accommodation

17

request.  Documenta^  sufficient if it: (1) describes  ^ ture, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed.  For example, an employer can ask an employee requesting an accommodation to provide documentation from his treating physician that substantiates that he or she has a disability, confirms that his or her hospitalization is related to his disability, and provides information on how long he or she may be absent from work.

If an employee provides insufficient documentation, the employer may send the employee to an appropriate health care professional of the employer's choosing. But the EEOC points out that, if the employee provides insufficient documentation in response to an employer's initial request, the employer should first give the employee an opportunity to provide the missing information.  In addition, the employer should consider consulting with the employee's doctor, after first obtaining a release from the employee that will permit the doctor to talk to the employer.  If an employee is examined by the employer's health care professional, the examination must be job-related and consistent with business necessity, and the employer must bear all costs.  If an employee is being examined because the employer believes he or she may pose a direct threat, the employer should direct the employee to a health care professional who has expertise in the employee's specific condition and can provide medical information that allows the employer to determine the effects of the condition on the employee's ability to perform his or her job.

According to the EEOC, asking about an individual's genetic information may be a disability-related inquiry. Genetic information is defined in the same way as is "protected genetic information" in Executive Order 13145. Thus, an employer may not ask an applicant (or an employee, unless the inquiry is job-related and consistent with business necessity) for information about his or her genetic tests, genetic tests of his or her family members, or the occurrence of a disease, medical condition, or disorder in his or her family members.

The Plaintiff is requesting compensatory and punitive damages as well as an injunction to restore him to his prior standing, a handicapped parking space, a separate office which allows him reasonable accommodations due to his neurological disability allowing him to control his own air/heat controls. and in response to his disability, vertigo. Robinson v. Instructional Systems, Inc., 80 F.Supp. 2d 203 (S.D. NY 2000). An award of prejudgment interest on compensatory damages is appropriate when fairness and full compensation to the plaintiff require it to make plaintiff whole. Prejudgment interest applied both to award of backpay and to award for mental anguish. Rubinstein v. Administrators of the Two Lane Educational Fund, 218 F.3d 392 (5th Cir. 2000). Punitive damages are available only if the complaining party demonstrates that the respondent engaged in a discriminatory practice with malice or with reckless indifference to a federally protected right. Barnett v. U.S. Air, Inc., 288 F.3d 1105 (9th Cir. 2000). If an employer fails to participate in or obstructs the interactive process, injunctive relief is an available remedy to insure compliance with the interactive process of a reasonable accommodation.

The Plaintiff has proven a prima facie case for being covered under the Rehabilitation Act, 29 U.S.C.A. §§ 706, 791-794. The Agency's Actions Were Discriminatory and There Were No Valid Nondiscriminatory Reasons for its Actions.

The Plaintiff has proven a prima facie case for violations of Title VII in the areas of Race, Reprisal Discrimination, Rehabilitation, Disparate Treatment and Hostile Work Environment. The Plaintiff received disparate treatment in comparison to similarly situated employees.   The Plaintiff was denied his constitutionally due process rights.

The Preponderance of the evidence and **exhibit 2** attached establish that the plaintiff and the defendant's positions of facts are in dispute. The Defendant's claim that their personnel actions were based on legitimate non-discriminatory actions.   Legitimate Non-Discriminatory Reason is defined as - A "legitimate non-discriminatory reason" is that reason which is supported by credible witness testimony and documentation that is put forth by the employer for the personnel decision being challenged.

In addition, the plaintiff has proven that there is a "casual connection between the "act of harm" and the "protected basis." Finally, the plaintiff was subject to retaliation for Filing or Opposing Practices - The theory of "retaliation" is used when an employee asserts that he or she is experiencing reprisal for complaining about discrimination, for opposing practices prohibited by Title VII of the U.S. Civil Rights Act or the California Fair Employment and Housing Act

or for participating in an EEOC or DFEH investigation. Retaliation complaints may also assert that an individual is being treated poorly for refusing unwanted sexual advances, or for refusing to participate in discriminatory conduct. Retaliation investigations compare how an individual was treated before he/she complained of discrimination or engaged in protected activity. The timing of the retaliatory act is a crucial piece of evidence. A "causal connection" must be demonstrated between the "act of harm" and the "charging party's" earlier complaint of discrimination. Retaliation for reasons other than for filing or opposing practices prohibited by state or federal anti-discrimination statutes is not a "protected activity."

## VI. ALLEGATIONS AND FACTS SUPPORTING THE VIOLATIONS OF TITLE VII BY MANAGEMENT:

For each allegation of violations of Title VII and the Rehabilitation Acts, the plaintiff has proved a prima facie case and provided direct evidence by exhibits to prove the allegations he has made as noted above.

- Facts Supporting Management's Violation of The American's Disability Act, Disparate Treatment, and Fraud

- False Statements made by Management: In response to EEOC inquiries which is a violation of the U.S. code tab1-8, Section 100-111, 29 – C.F.R. – 1410.5 – Special Procedures, Medical Records

○ If med records are requested for insp n in which in the opinion of the Director of Administration may be harmful to the requestor, if personally inspector by him such records.

- Such records will be furnished only to a Licensed Physician designated to receive such by the requestor.

- <u>Written Authorization -</u> Prior to such disclosure by the requestor. Physician must furnish a written authorization. Here is some requestor showing authorization was not given to Inspect Records of Plaintiff. **See Exhibit 3.**

## 1410.05 - Special Procedures Medical Records

There are six (6) requests addressed to Catherine Teti, Vera Whisenton, Lisa Douglas, and Jim Andrews, U.S. government personnel, who knowingly and willfully concealed and covered up material facts, made ficticous statements and false statements, 18 U.S.C.§ 1001.

- <u>See U.S. Department of Commerce -</u> Report of investigation of Albert Morton complaint No. 99-58-00816 - Copy

- <u>Affidavit - Catherine Teti:</u> Catherine Teti, Director - OAJ - Complainant present Catherine Teti with a memorandum dated December 7, 1998. There was 1992 court decision provided and individual room, where he

controlled th    temperature, air conditionin    medical condition that affects his ability to speak.  Catherine Teti sated she consulted the Doctor, employee staff and the Office of the General Counsel. Management claimed that there was no record of plaintiff's disability that could be found (See **Exhibit 4**).

- **Exhibit 5 – June 1998:** Jim Andrews, Supervisor and Catherine Teti, Director- OA stated there was no discrimination of his medical disability or court order settlement. See **Exhibit 5**.

**EEOC Docket - 1981, 609 Agency Case - 97-5-0207-01**

**Department - Request to Re-Open and Re-Consider**

1. 1614.108 – Investigation of Complaints.  The investigation of an EEOC complaint is to be conducted by the agency, against which the complainant had been filed.  Catherine Teti, Jim Andrews, Supervisor and Director and Lisa Douglas, Employee Relations Specialist asked for a second request of my medical authorization to have a separate office and handicapped parking space.  These records have been part of my personnel records for numerous years.  I did not provide written authorization for Mr. Jones, Catherine Teti or Mr. Douglas to speak personally to my medical doctor regarding my health concerns.  All staff must adhere to the Privacy Act and the staff must adhere to the Privacy Act.

## Title VII Violation by Management:

- **1410-Special Procedures Medical Records.** If medical records are requested for the inspection that may be harmful to the Plaintiff, such records will be furnished only to the Licensed Physician designated to receive such records by requestor.  Requestor must have a written authorization from the employee in order to receive medical disclosure. This was not done; no one requested written authorization from me to obtain my medical records.  My privacy has been violated.

- **Dr. Jones violated Plaintiff's rights by not obtaining written authorization to obtain medical records:** Dr. Jones Memorandum - The report indicates that the Mr. Morton suffers from recurrent Vertigo, which affects his walking.  Mr. Morton's medical condition may be incompatible with his position as an audiovisual equipment operator.  He is direct to undergo a fitness for duty examination with S.C.F.R. - Section 339.3 OC (B) (3).

  - Verification of the requestor signature of the request or will be accomplished by a comparison of signature.  This was not done.
  - R. Heinemann and Catherine Teti.  Plaintiff could not contact Complainant's physician who was out of the country for three to four (3-4) months, and Ms. Teti and Mr. Heinemann refused to wait until my physician returned to the country.  Mr. Heinemann and Ms. Teti proceeded without a medical basis for revocation of the plaintiff's

disability accommodations and without talking his physician. They revoked the complainant's parking privileges on July 31, 1999, which meant conduct, unlawful practice with malice or reckless indifference to the individual, federal protected rights.

- Handicapped Employees – The Department of Commence had/has a record of complainant's permanent disability, which impaired my mobility, which is severe. The complainant was entitled to reasonable accommodations under the American Disabilities Act (ADA) and the Department of Commerce ignored the fact that the employee has a disability which was reckless and in violation of the complainant's civil liberties.

   a. Dr. P. Edelman – Parking. I am in receipt of a letter from Catherine Teti, Director stating Dr. Phillip Edelman, Director, Toxicology and Clinical Services. In his impression, the plaintiff decreased ability to walk and other symptoms may be related to depression or other psychiatric factors.

   b. The day I received the letter, I went to George Washington Hospital to see Dr. Philip, Edelman and I asked him did he know Catherine Teti at the Department of Commerce. He said, maybe, so I shared with him the letter and stated you never tested me for depression or any psychiatric factors; hence, what basis was this letter written. After Dr. Edelman looked at the letter, he hurried to his office and shut the door.

25

As 'Χ leaving one of the Physical Th asked me if she could help me and I told her I need to see Dr. Edelman. Dr. Edelman recommended my parking privileges at the Department of Commerce be revoked. She sated to me that Dr. Edelman's job is write down what he found after testing. Again, I was not tested for depression. Dr. Edelman's recommendation was not medically based on any medical information he derived from testing me, and he definitely should not have recommended revoking my parking privileges.

c. Catherine Teti, Dr. Jones, R. Heinemann, Dr. P. Edelman and Vera Whisenton have violated the American Disabilities Act and the complainant's right to reasonable accommodations. They were aware that the plaintiff suffered from Vertigo, which limited Mr. Morton's ability to walk and balance. Mr. Morton's medical condition may be incompatible with his position as an Audio Visual Operator. They are not aware that at one time I had two (2) assistants to aid me in performing audiovisual duties. Management stated that they found me working in a much cluttered equipment room. First, I must explain that Jim Beam built a room within a room for Ron Lawson being the other employee. This additional room was built to provide me with reasonable accommodations involving control of the heat and air conditioning for my side of the room. Management decided to knock down the area designated for me and moved me back to the basement. This

26

act by management reflects the age discrimination, retaliation and refusal to provide reasonable accommodations to the complainant. Management's actions are in violation of Title VII and the Court Order of 1986.

d. **Perpetration of a Fraud** – Robert Heinenmann and Catherine Teti revoked Complainant's Parking Privileges on July 1, 1999. On the basis of age, disability, vertigo, with neck, nerve damage and back injuries that affect his balance, walking, long distances, in Catherine Teti. Summary Complainant, Page 8 of the State extensive inquiries with his physician before accommodating the complainant by limiting the distance he could walk to perform his duties. This is not true.

2. **U.S. Department of Commerce -v- Albert Morton, 99-51-00816, June 1999 EEEO Settlement.** Jim Andrews, Supervisor and Catherine Teti, Director stated that there was no documentation for the complainant's medical disability or court order for accommodating his disabilities (See **Exhibit 4** – Settlement Agreement). Ms. Teti and Mr. Andrews' actions breached the EEOC settlement agreement between Department of Commerce and the Complainant. (See **Exhibit 5**, dated June 16, 1996. Dr. Jones, Physician for Department of Commerce at time of settlement and James Morrison, Attorney for Complainant).

- Biospheres Incorporated

It is not possible to eliminate your exposure to dust and fumes in any office in HCHB commerce.  They should have professional and should have completed a full and detailed indoor air quality assessment to check on this limited scope.

- I am not someone without any training in the anticipation and only going by something.

- The company came in 1991 or 1992 and the job of eliminate the dust and fumes in his office, which was satisfactory.  This was done in malice, found seven (7) miles of moving equipment in the Department of Commerce.

- Biosphere Incorporated - Limited air quality assessment – Rooms B837-828, U.S. Department of Commerce - Prepared for Kenneth McDow, Office of Federal Prosperity Programs, Washington, D.C. 2–30.

  - I was treated differently from other employees.  A limited study was conducted for this room.  Evidence must produce affirmative evidence.

■  ˈality: Ken McDow, Henry Brad    , ᵤgh Brennan, and James Beam. There are quality was found normal. This shows the deposition of EEO Office. The Department of Commerce did not conduct all of the air quality tests are required. The agency withheld 16 pages of the report. This is the same thing in the case, which is the case. Also, now  withholding evidence in the case, management, her perpetrated a fraud over three (3) years, see newly discovered evidence – Layne –v-Jefferson 1992-798 F Supp 989. There are material facts that are in dispute.

■  See Reports: Limited scope – Indoor Air Quality and Assessment

- **Jim Andrews Report dated February 12, 1999**

From Robert Heinenmann – cc: Kimberly H., Catherine Teti, Jim Beam, OGC personnel cannot find any case that all win. However, it is moot point because he was moved right across the hall and the air quality is the same.

The EEO withheld this case five (5) years for action from 1999 to 2004.  A librarian found a box in the library that was put there by management that held a letter from my physician outlining my disability and medical condition. Management in 1996 to provide reasonable accommodations for the plaintiff used this letter and this is the same letter that management claimed they had no recollection of regarding complainant's medical condition.

29

Plaintiff had a serious injury from an automobile accident and plaintiff cannot walk as fast as he once did, and suffered back and leg injuries. Dr. Jones stated in his response that the plaintiff did not suffer from any medical injuries; however, the letter from his physician proved otherwise. The management staff made false statements in response to EEOC injuries, which is a violation of the U.S. Code, Tab 18, and Section 100-111. My parking space was revoked based on fraudulent information by Dr. Edelman and Dr. Jones. Their actions support the fact that I was subjected to retaliation, disparate treatment and violation of ADA under Title VII.

- **Managements' Statement**

Management claimed that they had no records of the complainant's disability (**See Exhibit 7**). Management willfully made false statements and harassed plaintiff without cause. Further, they claimed that no such agreement from the court. See **Exhibit 8 dated** for February 5, 1999. The case was never adjudicated. Burlington -v- Westinghouse 246, F839.

February 17, 1999 – Memorandum. My doctor was out of the country three or four months. Catherine Teti cited in the affidavit 4/201 stated that complainant's 1992 settlement 2000. It is Personnel and Management's responsibilities to have a copy of the settlement. She stated the room 1327 would not expose him to the dust and cold temperature. The move will take place immediately. This is far from the truth.

Management did no'   ⌣as to my suffering from the cc   ⌣ong as the move takes place. Plaintiff put a large piece of cardboard and placed it over the air vents trying to keep the cold air out of his cubicle due to the fact that the cold temperature affected him adversely and I suffered pain in my face as noted that I would in the original notice from my doctor. Management was informed of the medical problem and did not move me or attempt to accommodate me; they ignored my complaints regarding the medical problems I was having.

The willful false instrument of an employee is a violation of the U.S. Title XVII, Section 100-11.

- ## Fraud by Management and Staff

Vicki Braske, Human Resources Manager. The medical documentation that issued to more Mr. Morton. He was giving permission to release this information. This is a Fraud, Catherine Teti, Director taking 1410.5, special procedure records are required to furnish to a licensed Physician, prior to disclosure. The requestor must furnish a signed written authorization to the service to make such disclosure; verification of the requestor's signature will be accomplished by a commitment of a signature. I, Albert Morton did not give any one a written authorization or vocal authorization. The agency had a record of the plaintiff disability and signed the record. Removal of all reasonable accommodation, cause a hard ship of suffering and pain to the complaintant Management did not care U.S. Title VIII, Section 10.011.

Catherine Teti, K. Walton, Lisa M. Douglas, Jim Anc s, K. E. Hawker, we found nothing after Bill Bigloo. If were perfectly acceptable to request updated medical. This information was under the jurisdiction commerce, EEOC.

From Kimberly H. Walton, dated February 12, 1999, I am concerned that Al, Adam Bruised. No one bothered to check the settlement agreement; therefore, the settlement has been breached.

See Exhibit 9 - Commerce Management, Bob Heinemann, Jim Beam, Catherine Teri, Director, Thomas Jones, Vera Hinsonton, and Fred Halitosis subjected me to Disparate Treatment, Retaliation, Harassment, and Reprisal. All of the management staff was part of the conspiracy with the knowledge of the intent does some act in furtherance, U.S. Washington Co. -66.1662.33. The willful false instrument of an employee is a violation of the U.S. Title XVIII, Section 100.11.

<u>U.S. EEOC Decision</u>

The EEOC administrative judge stated that in his accomplishments some person medical record had been stored in a P.O. Box on the all the open. Letter from my doctor, which any could see with my name on it any one in the liberty could read. Letter as to my disability and regarding accommodation, management interference with his right to privacy and violation of his civil rights that are protected by courts and the right to privacy and interference with his reputation.

Plaintiff had a right    protect under Title VII.  This wa:    anagement's way of Retaliation, **Exhibit 9**: 5-31.2000, See **Exhibit 9**.  Refrain from interference with the removal of old equipment, when I tried to get some of my personal items that was discarded by management; Management called Security personnel to remove me from the area.  Plaintiff suffered adverse action, the conduct claimed to be protected, and claimed retaliatory conduct of defendant is a factor.  Courts weigh in determining whether the causal element is satisfied.

## Disparate Treatment

See **Exhibit 10**:  Plaintiff discovered the fraud over three (3) years.  He looked in other EEOC cases, where the truth was not told.  Catherine Teti is no longer an employee of the Department of Commerce, but within two (2) months of the Plaintiff's medical records being given back to him, the retaliation, harassment, and reprisal by management escalated which is violation of Title VII.

## Affidavit - Albert Morton

A review of the Complainant's Affidavit, he disclosed that complainant refused to give any testimony regarding his medical condition.

Complainant told EEO Counselor in his affidavit that He suffered a disability due to Vertigo and Nerve Damage in addition to injuries suffered from a car accident that resulted in back and head injuries. The Vertigo limits my ability to walk long distances. Affidavit states that I requested reasonable accommodation for my disability from Catherine Teti and Bob Heinemann. In addition, I informed Dr. Jones of my disability and he informed me that my personal records had disappeared which supported my disability.

## VII. JURISDICTIONAL

Plaintiff, Albert Morton is filing a civil EEOC case against the defendant, U.S. Department of Commerce and Carlos M. Guiterez, Secretary. This EEOC case is being filed due to the fact that the Plaintiff was discriminated against in violation of Title VII of the Civil Rights Act of 1964. Plaintiff was subjected to Age and Race Discrimination and Reprisals for filing former EEOC complaints against the Defendant.

U.S. District Court has jurisdictional over Title VII - Subject Matters 28 - U.S.C. 1331(a). The Law of U.S. under which Plaintiff contends the action arises is Title VII of the act of 1964. U.S.C. 200 - Subsection 2000-2 (A) and 2000 5(f) prohibitions discrimination, violated of complainant civil rights.

### *Standard of Review*

**I. Summary Judgment Standard - Rule 12(b) (e)**

The court takes the well pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor. "Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993). In the case, Conley v. Gibson, (1957) issue was raised in accordance to Federal Rule 12(b) (e) of whether a claim for relief is insufficient if it appears that the plaintiff can prove facts in support of the claim, which would entitle him to relief, but does not include such facts in the claim.

The Court asserted that "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

The plaintiff's claim stated allegations that the senior managers of the Department of Commerce violated the plaintiff's constitutional due process rights, Title VII and the Rehabilitation Act/ADA. More specific facts were not required by the Rules.

In Conley v Gibson (1957), the Defendant argued that the Plaintiff's claim lacked specific facts sufficient to state a claim which entitled the plaintiff to relief. Majority Reasoning: The Federal Rules do not require the claimant to

detail the facts upon which he bases his claim. They only require a "short and plain statement of the claim" that will give fair notice to the D. of the claim and the grounds on which it rests. The Forms in the rules are an example. Any further facts needed to more narrowly define the scope of the claim and the possible defenses can be obtained through pretrial discovery. Rule 8(f) states that all pleadings shall be "construed as to do substantial justice." Thus, their purpose is to facilitate a proper decision on the merits, not to become a decisive trap for the less skilled counsel.

## II.  Summary Judgment Standard - Rule 56

On a Motion for Summary Judgment, Rule 56 requires, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Conclusion:   Plaintiff's **Exhibits** disappeared going back to 1988 from the Department of Commerce's Personnel department.   The Plaintiff has been harmed because he cannot produce 15 of the **exhibits**, which would support his case.   There is no way a supervisor, Bob Heinemann and Catherine Teti would give the plaintiff parking privileges or reasonable accommodations.

Management is gui' causing Plaintiff hardship an ring along with humiliation and violated his ADA laws by not providing him with reasonable accommodations in accordance with Title VII and the American Disabilities Act (ADA).

In conclusion, the U.S. District Court has jurisdictional over Title VII - Subject Matters 28 - U.S.C. 1331(a). The Law of U.S. under which Plaintiff contends the action arises is Title VII of the act of 1964. U.S.C. 200 - Subsection 2000-2 (A) and 2000 5(f) prohibitions discrimination, violated of complainant civil rights.

> **28 U.S.C. § 1331 (the federal question statute):** The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

> *Merrell Dow Pharmaceutical v. Thompson:* Having a federal ingredient in a complaint is not sufficient to support federal jurisdiction. Federal law must give rise to the claim for there to be a federal question, and therefore federal jurisdiction.

In the case, Conley v. Gibson, (1957) issue was raised in accordance to Federal Rule 12(b) (e) of whether a claim for relief is insufficient if it appears that the plaintiff can prove facts in support of the claim, which would entitle him to relief. The plaintiff's claim stated and allegations prove that the senior managers of the Department of Commerce violated the plaintiff's constitutional due process rights, Title VII and the Rehabilitation Act/ADA. More specific facts were not required by the Rules. The Plaintiff's Motions

before the court established a prima facie case for ea Title VII violation of the Defendant's. The Plaintiff has submitted **Exhibits** to support his prima facie case as evidence in opposition, to the Defendant's Request for Summary Judgment... The Prima Facie cases proven by Plaintiff is consistent with Rule 56 which requires, "the court to consider the pleadings, related documents, and evidence in a light most favorable to the non-moving party. Adickes v. Kress C Co., 398 U.S. 144 (1970).   Summary judgment is appropriate "even in the face of some factual disputes, where the undisputed facts demonstrate that one party is entitled to judgment as a matter of law..." Esser v. Phillips, 710 F.2d 292, 296-97 (7th Cir.), cert. denied, 464 U.S. 918 (1983) (citations omitted). Summary judgment is inappropriate, however, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

Plaintiff's motions and filing have included proof that he has proven his prima facie case:

## REMEDY:

The complainant is asking for $300,000 for each Civil Rights Violation under Title VII and a promotion to Grade 12 and 15 years back pay at the Grade 12 level.  In addition, I am requesting that the personnel who violated my civil rights be removed from their positions and adverse actions are taken against each one for their civil rights violations. The Plaintiff has been subjected to

Title VII Violations. The Employer's Title VII violations have had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Morton respectfully requests the Court to enter judgment in his favor and against Defendant, Carlos M. Guiterez, Secretary, Defendant, U.S. Department, U.S. Department of Commerce, Agency, and to accord him the following relief:

( a )    Back pay with prejudgment interest and all the fringe benefits to which he is entitled;

( b )    Front pay, back pay and benefits to the extent reinstatement is not feasible;

( c )    Compensatory damages for his non-economic injuries in an amount authorized by Title VII and by the Human Rights Law and the City Law;

( d )    Punitive damages to punish and deter Defendant, Carlos M. Guiterez, Secretary, Defendant, U.S. Department, U.S. Department of Commerce, Agency from future acts of employment discrimination in an amount authorized by Title VII and the City Law;

( e )    Liquidated damages in an amount equal to twice Mr. Albert Morton's back pay losses as authorized by the ADEA;

( f )    An award of [reas]onable counsel fees and costs to [com]pensate Mr. Morton for having to prosecute this action against Defendant, Carlos M. Guiterez, Secretary, Defendant, U.S. Department, U.S. Department of Commerce, Agency; and

( g )    Such other legal and equitable relief or may be just and proper under the circumstances.

## JURY DEMAND

Mr. Albert Morton, Plaintiff demands that    Defendant, Carlos M. Guiterez, Secretary, Defendant, U.S. Department, U.S. Department of Commerce, Agency demands a trial by jury on all the issues in this action that are triable by law.    Plaintiff is requesting $300,000 per Title VII Violation.

Respectfully Submitted,

_Albert Morton_                          4-25-07
Albert Morton                            Date

1430 W Street, S.E.

Washington, D.C.  20020

(202) 889-4714

## Certificate of Service:

I, Albert Morton, certify that copies were sent by certified mail on Tuesday,

April 25, 2007:


Dorann Banks                        Roscoe C. Howard, Jr.

Assistant U.S. Attorney             U.S. Attorney

U.S.Attorney Office                 950 Pennsylvania Ave., N.W.

District of Columbia                Washington, D.C.  20001

555 4th Street, NW, Room 10-911

Washington, D.C.  20530




_Albert Morton_                     _4 - 25 - 07_

Albert Morton                       Date

1430 W Street, S.E.

Washington, D.C.  20020

(202) 889-4714

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALBERT MORTON,                    )
                                 )
            Plaintiff,           )
                                 )
        v.                       )    Civil Action No. 91-0125 (CRR)
                                 )
ROBERT A. MOSBACHER,             )
                                 )
            Defendant.           )    **FILED**
_____)

FEB 2 8 1992

**MEMORANDUM TO THE COURT**          CLERK, U.S. DISTRICT COURT
                                        DISTRICT OF COLUMBIA

This is to inform the Court that subsequent to the status
conference held on December 16, 1991, Mr. Albert Morton was moved
on January 10, 1992 from the basement offices of the Operations and
Maintenance Division, the Office of Procurement and Administrative
Services (OPAS), to an office on the first floor. The entire
Office of Procurement and Administrative Services (OPAS) will be
moving to the second floor in mid-April, including the Publication
Division which is temporarily occupying space on the first floor.
When OPAS moves to the second floor, the Division of Operations and
Maintenance, OPAS, will be relocated in its entirety to the first
floor. Employees of the Operations and Maintenance Division are
presently located in the basement except for the plaintiff.

The delay in relocating OPAS and its component, the Operations
and Maintenance Division, was a result of finding asbestos during
renovation of the 7th floor offices of the Economic Development
Administration (EDA). All employees of EDA had to be relocated to
the second floor until the completion of asbestos removal.

Exhibit 4  Page 9k

2

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

ALBERT MORTON                                    )
Appellant                                        )
                                                 )
        v.                                       )  EEOC Docket No. 01981609
WILLIAM M. DALEY                                 )
Secretary                                        )  Agency Case No. 97-51-0207-01
Department of Commerce                           )
                                                 )
    Agency                                       )
                                                 )

_____

## DEPARTMENT''S REQUEST TO REOPEN AND RECONSIDER

The EEOC should deny motions to reopen the case on Albert Morton -v- Department of Commerce, the decision on June 25, 1999 - 01981609.

The Department have stated they did not have copy of records and the court agreement, civil action no. 91-0125 in the settlement of his case. complainant filed his appeal on February 23, 199 with the EEOC and the settlement on November 2, 1992 and Department of Commerce with records from the court and other documentation going back to 1988.

The Department lost the records or did away with the records. In the complainants appeal, he supplied the Department with 15 exhibits in his appeal. Complainant asks the EEOC not to reconsider and reopen the case because they had time to get the records. They did away with the records. I told them the name of their lawyer from the Department was Jan Cook and the lawyer from the Justice Department, whose name was Diane Sullivan for the Department and case no. 91-0125 and they did not follow up to call the Justice Department.

The EEOC should deny motion to reopen. EEOC - Appeal No. 01981609.

The agency's files and other records should administer agencies to be able to refresh their recollection by digging into their own files as this may seem useful when fully informed

                                        Albert Morton
                                        1430 W Street, SE
                                        Washington, DC

                        20020

2  2

*2*

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | |
|---|---|
| ALBERT MORTON<br>Appellant | )<br>) |
| v.<br>WILLIAM M. DALEY<br>Secretary<br>Department of Commerce | )<br>)<br>)<br>) |
| Agency | )<br>)<br>)<br>) |

EEOC Docket No. 01981609

Agency Case No. 97-51-0207-01

## DEPARTMENT'S REQUEST TO REOPEN AND RECONSIDER

The EEOC should deny motions to reopen the case on Albert Morton -v- Department of Commerce, the decision on June 25, 1999 - 01981609.

The Department have stated they did not have copy of records and the court agreement, civil action no. 91-0125 in the settlement of his case. complainant filed his appeal on February 23, 199 with the EEOC and the settlement on November 2, 1992 and Department of Commerce with records from the court and other documentation going back to 1988.

The Department lost the records or did away with the records. In the complainants appeal, he supplied the Department with 15 exhibits in his appeal. Complainant asks the EEOC not to reconsider and reopen the case because they had time to get the records. They did away with the records. I told them the name of their lawyer from the Department was Jan Cook and the lawyer from the Justice Department, whose name was Diane Sullivan for the Department and case no. 91-0125 and they did not follow up to call the Justice Department.

The EEOC should deny motion to reopen. EEOC - Appeal No. 01981609.

The agency's files and other records should administer agencies to be able to refresh their recollection by digging into their own files as this may seem useful when fully informed

Albert Morton
1430 W Street, SE
Washington, DC

20020

must be provided to FMCS prior to review of the record. The requestor will be provided the opportunity to review the records during normal business hours.

## § 1410.5 Special procedures: Medical records.

(a) If medical records are requested for inspection which, in the opinion of the Director of Administration, may be harmful to the requestor if personally inspected by him, such records will be furnished only to a licensed physician, designated to receive such records by the requestor. Prior to such disclosure, the requestor must furnish a signed written authorization to the Service to make such disclosure and the physician must furnish a written request to the Director of Administration for the physician's receipt of such records.

(b) Verification of the requestor's signature will be accomplished by a comparison of signatures if such authorization is not executed within the presence of a Service representative.

## § 1410.6 Requests for correction or amendment of records.

(a) If the individual disagrees with the information in the record, he may request that the record be amended by addition or deletion. Such a request must be in writing and directed to the Director of Administration, Federal Mediation and Conciliation Service, Washington, DC, 20427. The request must also specifically outline the amendment sought. The Director of Administration or his designated representative will acknowledge receipt of the request within 10 working days from the date of receipt of such request. Under normal circumstances, not later than 30 days after receipt of the request for amendments, the Director of Administration will either:

(1) Amend the record and notify the requestor in a written letter of determination to what extent the record is amended; or

4

December 7, 1998

MEMORANDUM

TO:         Whom It May Concern
            Department of Commerce

FROM:       Albert Morton
            Audio Visual Equipment Operator
            Department of Commerce

SUBJECT:    Medical Disability

The purpose of this memorandum is to advise you that in 1992, the Department of Commerce agreed in a court proceeding (i.e., C.F.R. 1614.107 (A1 1992) to provide Reasonable Accommodations to me due to my medical disability, which is covered under the Americans Disability Act (ADA).   Under Title VII and Americans Disability Act, 23 F.R.D., 614.20 3(w)(1), the Department of Commerce agreed to provide reasonable accommodations after I provided medical documentation to substantiate my medical disability regarding my face and exposure to various environmental conditions (i.e. cold air, heat, exposure to elements such as toxic fumes, dust, allergens, etc.).  These conditions severely impact a life function, my ability to speak.  The accommodations provided my management were that that I would be provided an individual room in which I can control the heat or air conditioning system of my office space in order that the adverse element and/or conditions did not adversely affect my medical disability.  I suffer from this condition on a daily basis and adverse conditions substantially limits a major life activity (i.e. speech), and my employer has records, which documents this disability.  My doctor has provided my employer with relevant information about my functional disability and working area restrictions.

In 1992, the District Court ordered the employer, Department of Commerce to provide me with Reasonable Accommodations and to ensure that I was placed in a position of "undue hardship."

It is my understanding that a proposal is being considered to move to an office space with other employees which would result in my inability to control the work space elements (i.e. heat, air conditioning).  This action which adversely affect my medical condition, and I am requesting reconsideration of this proposal.   Therefore, I am requesting that the office in which I currently encumber remain my office space. The office space I was moved to as a result

4

Page 02:  Albert Morton's Request for Reasonable Accommodations

of the 1992 agreement with this agency and the court has been demolished. Hence, I am requesting the current space I am occupying be modified to meet the terms of the court agreement and the necessary modifications be made to the room to make it conducive to meeting the reasonable accommodations directed by the court. The space I am speaking of is the office space formerly occupied by Mr. Ron Lawson. However, I have one (1) request, which would require modification of this space, which is to add a single switch in which I can operate the heat and air conditioning for this room.

I appreciate your consideration and approval of this request to provide me Reasonable Accommodations under the Americans Disability Act.

a. Morton — Dec 7-98

EXHIBIT  17
PAGE 169 OF 222

JUN 1999

5

JIM ANDREWS SUPERVISOR AND CATHERINE TETE DIRECTOR O.A.O STATED THERE WAS NO DOCUMENTATION OF HIS MEDICAL DISABILITY OR COURT ORDER SETTLEMENT. *Key Should Transfer first Telly He'll me an*

## BREACH CONTRACT

EACH TIME COMPLAINANT HAD TO GO BACK TO THE BASEMENT, BREACH THE COURT ORDER AGREEMENT TWO TIMES. MALICIOUS INTENT TO DEPRIVE OF HIS CONSTITUTIONAL RIGHTS. THE RECORD CONTAINED SUFFICIENT EVIDENCE TO CREATE THE GENUINE ISSUES OF MATERIAL FACTS 826 F2D-33-1981.

THE COURT ORDER WAS NOV, 1992 SEE EXHIBIT CIVIL ACTION NO. 91-0125-(CRR).

THE ORDER ALBERT MORTON MOVED TO BE MOVED FROM THE BASEMENT. RON LAWSON AND JIM BEAM FILL HIS ROOM WITH BOXES AND EQUIPMENT AND BUILD THE NEW ROOM WITH A LONG TABLE FOR RON LAWSON. THE YOUNGER EMPLOYEE RECEIVED MORE FAVORABLE TREATMENT THAN THE OLDER EMPLOYEE.

*Exhibit - 3*

E
P   5  *11*

*MEMORANDUM:*

TO:        Dr. Jones, Physician
           Department of Commerce

FROM:      Albert Morton, Audio Visual Specialist
           Department of Commerce

RE:        Handicapped Parking Space


This letter is in follow-up to your latest request to obtain additional information from my doctor regarding my prognosis, diagnosis, etc. I have complied with your last four (4) requests to obtain this medical information from my physician. Each time I have provided you with the information requested, I am told the subject information is not adequate. Your latest request has placed a deadline to obtain this information by January 22, 1996. I have contacted my doctor's office, and was informed that he is out of town until January 27, 1996. Therefore, since I have repeatedly complied with your previous requests, I am asking for an extension through January 30, 1996 to obtain this information you have requested.

I did not have this trouble when I provided documentation for the parking space before. I hope that I am not being singled out for this process since Mr. Harry Bradley, former supervisor, is supervising this division. It appears that I am being scrutinized unnecessarily. I hope my observations are incorrect.

~~information by January 30, 1996.~~

cc:
Attorney James Morrison

MAY-02-2000  14:02                        202 501 6633

                                                          P.11

EXHIBIT ___11___
PAGE _11_ OF _11_

To: Jim Andrews@REPMP@OSAS
From: Catherine Teti@OAO@OSAS
Cc:
Subject: re: fwd: re: Al Morton
Attachment: BEYOND.RTF
Date: 2/12/99 10:17 AM

I worked closely with Lisa Douglas (Employee Relations) on this. We looked in all the files we could locate (personnel, Jim Beame) and Lisa checked with GC - there is no documentation of any disability settlement. In addition, we asked Al to provide us copies of any relevant material in a letter to him, dated January 4, responding to his request for medical accommodation (the due date for his response was January 20). Al did not provide any documentation of any disability agreement and initially he provided no medical documentation of a current condition. When nothing had been received by February 1, I advised him that he would be moved, as of February 5. He then provided a letter, dated February 4 that did not fully respond to the medical questions. Lisa reviewed the matter with Dr. Jones and called the doctor who provided Al's letter. Based on their analysis, we determined there was no reason not to proceed with the move - which took place yesterday. I have all of the material and will be happy to share. Catherine

Catherine Teti, Director
Office of Administrative Operations/OAS
Telephone: 202-482-3721
Internet Address: cteti@doc.gov

February 5, 1999

## MEMORANDUM

TO:        Catherine Teti, Director
           Office of Administrative Services

FROM:      Albert Morton
           Audio Visual Equipment Operator

SUBJECT: Audiovisual Equipment Inventory Report

Please find attached the Audiovisual Equipment Inventory Report. This report depicts the audiovisual equipment, which I operate and maintain, and the condition of each piece of equipment in the Audiovisual Department.

If you have any questions in regards to this report, I am available to discuss this matter.

To:   Albert Morto  )AO@OSAS
From:  Vera Whisen  ]@OAO@OSAS
Cc:  Fred Hajmosi@OAO@OSAS
Subject:  Recap
Attachment:  BEYOND.RTF
Date:  02/24/2000 1:07 PM

9

Al:

To recap our conversations of the last two days, please be aware that you are directed to do the following:

1.  Provide me with a written explanation as to why you were unable to get the vcr to operate properly to show Secretary Daley's address to the audience. Please have same to me by COB Monday, February 29th.

2.  Provide me with at least two copies of the African American History Month production of last week by Monday COB, February 29th.

3.  Refrain from interferring with the removal of old equipment and other discards from Rooms B828 and B896. This includes going through the trash removed from these rooms. Under no circumstances are you to take materials so indentified as either trash or surplus to your office or any other office in the building.

4.  If you need something from B828 and Paul is not in the room, please ask Fred Hajmosi to assist you.

As was stated today, both of these rooms are going to be emptied and vacated. The state of the equipment and other resources in both rooms is deplorable and indicates your lack of ability to maintain and organize valuable government property.    It is also indicative of severe neglect on your part. It should also be stated that Room B896 was being used by you without my authorization nor knowledge. All of these actions will be duly noted in terms of your performance.

This further describes the state of the above mentioned rooms:

Of the approximately 1500 video tapes found (U-matic, Beta, VHS and reel to reel video tape), 95% are unlabelled, many have no protective cases and were stored haphazardly in file cabinets, boxes, and on the floor. Many, undoubtedly, are historical and should have been appropriately labelled, stored and transferred to the Main Library, as you were directed.   Valuable still and video cameras were found placed haphazardly in the open without protective lens caps, although the lens caps were found elsewhere in the room.   Film projectors were left in both rooms without their "mated" projective covers. Cans of old toxin chemicals, some dating back to the late '50's were found as well as old batteries that had leaked battery acid over equipment and supplies.   These batteries were mixed in mutiple file drawers and file cabinets.

Even though you have been tasked with surplusing old, outdated equipment, both rooms still continue to be filled with such resources.   I must also bring to your attention, that after Mr. Olivero and his assistant did remove such equipment from B828 several months ago, we later found out that you retrieved most of those resources and equipment from the loading dock WITHOUT authorization.

There is no apparent filing system for photographs, slides or audiotapes.   Instead, they appear to be literally thrown all over the room(s).   The A/V devices are not marked with their operational status. Many devices, including cameras, were found disassembled with parts scattered around the rooms and on the floor.

Numerous a/v connection cords wre found with the ends cut-off, making them unusable. Boxes and boxes of VHS tapes were found even though you recently reported to us you had no tapes to record the SES 2000 program. Also, boxes and boxes of bulbs were found in multiple drawers and other places in the room.   Food containers and well as remnants of food were also found in B828.   It was virtually impossible to find anything in the room.

Failure to abide by these directives could result in serious disciplinary action.   We do expect your cooperation. Thanks.

9  ).

agency  9  it s

|0

Management's ations are a continuing violation under Title VII of the Civil Rights Act. The complainant has a right to file an EEO charge under Title VII of the civil rights act. It is evident that management conspired and retaliated against the complainant with the intent to harass him and managements' malicous actions are a violation of my civil rights. U.S> Worker 220 - F. Supplement 661. A fraud has been perpetrated by Management against the complainant. It is clear that the Complaint may be supported, Judgement by Reasoning from Facts disclosed inthe record. _____ Dejay states Ullnc. -v- Ryan 229-F2d-867-871.

|0



UNITED STATES EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Albert Morton,
Complainant,

v.

Carlos M. Gutierrez,
Secretary,
Department of Commerce,
Agency.

Request No. 0520070097

Appeal No. 01A60657

Agency No. 025100200

## DENIAL

Complainant timely requested reconsideration of the decision in *Albert Morton v. Department of Commerce*, EEOC Appeal No. 01A60657 (August 29, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 01A60657 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Albert Morton,
Complainant,

v.

Carlos M. Gutierrez,
Secretary,
Department of Commerce,
Agency.

Appeal No. 01A60657

Agency No. 02-51-00200

Hearing No. 100-2005-00242X

## DECISION

Complainant filed an appeal with this Commission from the agency's decision dated June 1, 2005, dismissing his complaint of unlawful employment discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq*.

In his complaint, complainant alleged that he was subjected to discrimination on the bases of age (D.O.B. 05/18/34) and reprisal for prior protected EEO activity under the Age Discrimination in Employment Act of 1967 when, on January 24, 2002, complainant learned, for the first time, that personal items had been removed from his work space by management and stored in the 7th floor library without his knowledge. During counseling, he said that on that date a library employee gave him back a personal medical-related document. He also said that he later retrieved from the library a box containing a number of other personal items.

The agency accepted the complaint for investigation. Following the investigation, complainant requested a hearing before an EEOC Administrative Judge (AJ). The AJ issued a Notice of Intent to Issue a Decision without a Hearing on March 7, 2005. On March 21, 2005, the agency filed its Motion for Dismissal or, in the alternative, Summary Judgment. In its motion, the agency indicated that complainant stated the same claim in a prior EEO Complaint, namely Agency No. 00-51-01790. Complainant responded by asserting without support that there were facts in dispute and that the agency's motion for dismissal and/or summary judgment should fail.

5

01A60657

head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

AUG 2 9 2006

Date

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

07-751 JR

## I (a) PLAINTIFFS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF DC
(EXCEPT IN U.S. PLAINTIFF CASES)

11001

## DEFENDANTS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:
TRACT

Case: 1:07-cv-00751
Assigned To : Robertson, James
Assign. Date : 4/24/2007
Description: MORTON v. GUITEREZ

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Albert Morton
1430 W Street PE
Washington DC 20020

ATTO
Ro
950

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☑ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ☐ A. Antitrust
- ☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting & Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-Employment<br>☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment & Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☐ **1** Original Proceeding  ☐ **2** Removed from State Court  ☐ **3** Remanded from Appellate Court  ☐ **4** Reinstated or Reopened  ☐ **5** Transferred from another district (specify)  ☐ **Multi district Litigation**  ☐ **7**Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

TITLE VII Violation

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ 300,000 PEE Charge   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES   ☐ NO   If yes, please complete related case form.

DATE 4/25/2001   SIGNATURE OF ATTORNEY OF RECORD   Albert Norton   JTC

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

J:\forms\js-44.wpd